IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONIQUE FULTZ, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 14 C 4871 |
| TARGET CORPORATION, | ) Magistrate Judge Daniel G. Martin |
| Defendant/Third-Party Plaintiff, | ) |
| v. | ) |
| PRESTIGE MAINTENANCE USA, LTD., | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

After Plaintiff Monique Fultz ("Fultz") slipped and fell while shopping at a Target store, she filed this lawsuit against Defendant Target Corporation ("Target") alleging negligence under Illinois common law. In turn, Target filed a third-party complaint against Prestige Maintenance USA, Ltd. ("Prestige"), which provided overnight housekeeping services at that particular store under a contract with Target. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c), and Target has moved for summary judgment against Fultz. Because there is no genuine issue of material fact and Target is entitled to judgment as a matter of law on Fultz's negligence claim, the Court grants Target's Motion for Summary Judgment [59].

## BACKGROUND[1]

On May 3, 2012, Fultz arrived at the Target Broadview store at about 8 a.m. to do some shopping. The store was not very busy or crowded. That day Fultz was wearing platform shoes with high heels. The platform of the soles of the shoes was about 1 inch high and the heels were

---

[1]The facts are taken from the parties' Local Rule 56.1 statements and responses and are undisputed unless otherwise noted.

about 2 to 3 inches high. After shopping for about ten minutes, Fultz slipped and fell. Prior to falling, Fultz was walking through an aisle of the store, carrying her purse and an item of clothing in her right hand and a cell phone in her left hand which she was holding up to her left ear. When she fell, Fultz was talking on her cell phone with her sister. Video from the day of the incident shows that at about 8:38 a.m., Fultz's left foot slipped and she fell to the floor, landing on her buttocks and left hand.[2] Fultz does not know what caused her foot to slip or what caused her to fall.

Geneva Martin, a store employee, came to Fultz's assistance seconds after the fall. Martin did not see Fultz fall nor ask her how she fell. Martin observed Fultz standing and in an upright position. Martin testified that she "scooted" her feet across the floor and found the floor to be dry and "not slippery at all." Doc. 65 at 18, ¶ 20. Fultz disputes, however, whether the floor that Martin "scooted" her feet across was the precise area where Fultz actually fell. But it is undisputed that Fultz did not see or feel any liquid, solid material, debris, or anything else on the floor that could have caused her to fall. Martin visually inspected the floor after Fultz's fall and found it to be dry, not slippery, and without the presence of anything that could have posed a hazard, although Martin did not feel the area of the floor where Fultz fell with her hands.[3]

That morning Martin arrived at the store between 7:30 a.m. and 7:45 a.m., before the store's 8:00 a.m. opening. Between the time of her arrival and the store's opening, Martin walked

---

[2] It is undisputed that all portions of the video in which Fultz is shown are a true and accurate depiction of the events of May 3, 2012. Doc. 65 at 17, ¶¶ 10-14.

[3] In her Local Rule 56.1(b)(3) response, Fultz purports to dispute the fact that Martin visually inspected the floor. Her response, however, states only that "it is disputed whether the floor that Ms. Martin 'scooted' her feet across was not the precise area where Ms. Martin [sic] fell and it is disputed whether the floor was slippery." Doc. 65 at 19, ¶ 21. Because Fultz's response does not address whether Martin visually inspected the floor, the Court deems that fact admitted. Cracco v. Vitran Exp., Inc., 559 F.3d 625, 632 (7th Cir. 2009) (where plaintiff fails to adequately dispute facts set forth in defendant's Local Rule 56.1(a) paragraph, those facts are deemed admitted for purposes of resolving the summary judgment motion).

through the front end of the store, including the area where Fultz later fell. Martin's pre-opening walk-through included checking to make sure the floors were clean, dry, and generally safe for customers to shop. Martin testified that she specifically recalls walking through the front end of the store before it opened on May 3, 2012 and at that time, the particular aisle where Fultz would later fall had no obstructions, liquid, or slippery substances on the floor.

A Guest Incident Report filled out by another store employee when Fultz returned to the store later that day, indicates that the floor was clean and dry at the time of Fultz's fall, that her clothes were not wet or damaged, and that no object was involved in the fall. Fultz signed the Guest Incident Report and testified that the information contained on the report is true and accurate. Fultz did not tell any store employee that any foreign substance or object caused her to fall. Fultz claims that she was told by a cashier after the incident that the store "had multiple complaints that the floors were slippery after they bluff [sic] the floors" and that "our customers do complain a lot that our floors are very slippery" and that "they are even slippery for them." Doc. 65 at 21, ¶ 2; Doc. 60-2 at 32:15-18; 33:4-6.[4]

The store's surveillance video shows that in the approximately fourteen minutes immediately proceeding Fultz's fall, over a dozen customers walked through the same area without slipping and without any other apparent difficulty. The store's video also shows that in the seconds immediately following Fultz's fall, two customers and a store employee came to Fultz's aid or spoke to her and, in doing so, stepped on or near the same area of the floor on which Fultz had fallen. None of those people appeared to slip or to have any other type of difficulty. Additionally, in the approximately

---

[4] Target disputes that the cashier made any of these statements claimed by Fultz. Doc. 66 at ¶ 2; doc. 66-2. At the summary judgment stage, the Court accepts as true Fultz's testimony that the cashier made the statements claimed by Fultz. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (court must accept as true all facts set forth by the non-movant and draw all reasonable inferences in that party's favor when resolving a motion for summary judgment).

eleven minutes after Fultz fell and after she had left the area, at least ten other customers walked through the same area without slipping or having any other apparent difficulty.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists that precludes summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. Love v. JP Cullen & Sons, Inc., 779 F.3d 697, 701 (7th Cir. 2015). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## ANALYSIS

The parties agree that Illinois law governs the extent of Target's liability in this diversity action. Reid v. Kohl's Dept. Stores, Inc., 545 F.3d 479, 481 (7th Cir. 2008). Fultz's negligence claim is based on Illinois premises liability law. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." Id. The parties dispute whether Fultz can establish that Target breached its duty. "Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance." Zuppardi v. Wal-Mart Stores, Inc., 770 F.3d 644, 649 (7th Cir. 2014). It is not enough for a plaintiff to show that she fell on the defendant's flooring; rather, she must "go further and prove that some condition caused the fall and that this condition was caused by the defendant." Kimbrough v. Jewel Companies, Inc., 416 N.E.2d 328,

332 (Ill. App. 1981).

Here, Fultz's theory of liability is that the floor was unreasonably slippery because Target buffed the floor and left behind a foreign substance, which it knew or should have known would create a hazard. Target argues that Fultz cannot present sufficient evidence to create a genuine issue of material fact as to whether a foreign substance was on the floor or whether the floor was negligently treated or maintained.

**A.       Target's Responsibility for a Foreign Substance on the Floor**

Target first argues that there is no evidence that there was any foreign substance or object on the floor where Fultz fell. The Court agrees with Target that there is no evidence demonstrating that there actually was any liquid, debris, foreign object, or other substance on the floor where Fultz fell. It is undisputed that Fultz does not know what caused her to slip or what caused her to fall. Fultz "neither saw nor felt any substance or object on the floor that could have caused her to fall." Doc. 65 at 4 and 18, ¶ 19. Fultz admitted that the floor was clean and dry, her clothes were not wet after the fall, and no object caused to her fall. Additionally, Fultz did not tell any Target employee that any foreign substance or object caused her to fall.

It is further undisputed that prior to the store's opening on the day Fultz fell, Target employee Geneva Martin walked through the particular aisle where Fultz would later fall and found no obstructions, liquid, or slippery substances on the floor. Martin visually inspected the floor after Fultz's fall and found it to be clean, dry, not slippery, and without the presence of anything that could have posed a hazard. Finally, the store's video surveillance shows over a dozen people walking through the same area in the fourteen minutes before Fultz's fall without slipping or having any apparent difficulty; two customers and a store employee stepping on or near that area in the seconds immediately following Fultz's fall, again without slipping or having any apparent difficulty; and at least ten other people walking through the same area in the eleven minutes following Fultz's

fall, again without slipping or having any apparent difficulty. Fultz, therefore, has failed to create an issue of material fact that Target, or one of its employees, was responsible for a foreign substance on the floor.

Fultz argues that an issue of fact exists as to whether the floor was slippery because Target had buffed it. Fultz asserts that "there is evidence of a foreign substance on the floor that, after being applied, could have made the floor unreasonably slippery." Doc. 65 at 9. "In Illinois, the mere waxing or oiling of a floor is not negligence *per se*." Lucker v. Arlington Park Race Track Corp., 492 N.E.2d 536, 538 (Ill. App. 1986). Rather, "in order to demonstrate negligence, the evidence must show that the waxing or oiling was not properly performed." Id. "[A] store owner may treat his floors with wax or oil or other substance in the customary manner without incurring liability unless he is shown to be negligent in the materials he uses or in the manner of applying them. Id. (quoting Dixon v. Hart, 101 N.E.2d 282 (Ill. App. 1951)). Examples of acts by a defendant which might give rise to negligence in a case involving a slippery floor include using an excessive amount of wax, applying the wax unevenly, treating a part of the floor with wax and leaving a part untreated, or polishing a floor where people would unexpectedly step on the freshly treated surface." Id. Testimony that a floor is "slippery," "slick," "polished," or "shiny", however, is insufficient to establish an owner's negligence. Id.

Courts have held that plaintiffs cannot prevail on a negligence claim against defendants where they fail to put forth any evidence that the floors were excessively slippery, other than subjective characterizations about the appearance of the floor. Erkol v. Marshall Field & Co., 1989 WL 18248 (N.D. Ill. March 1, 1989); Magallon v. The Limited Stores, 1988 WL 92695 (N.D. Ill. Aug. 31, 1988); Lucker v. Arlington Park Race Track Corp.,492 N.E.2d 536 (Ill. App. 1986); see also Redenbaugh v. Residence Inn By Marriott, 2013 WL 1986382, *4 (N.D. Ill. May 10, 2013) (holding that the testimony of the plaintiff and her husband that the floor was slippery, or even "super slick,"

did not create a genuine issue of material fact that there was a foreign substance on the floor).

In Lucker, the plaintiff was a carpenter performing work at Arlington Park horse racing track when he slipped and fell and injured his back. Lucker, 492 N.E.2d at 537. The plaintiff testified that the floor "looked freshly painted," had a "high gloss," and was "slippery under foot." Id. A co-worker testified that he noticed that the floor was "slippery." Id. At trial, the court directed a verdict in favor of defendant on the issue of liability. The appellate court affirmed, finding that the only evidence concerning the defendant's negligence was the plaintiff's and his co-worker's "subjective verbal characterizations of the floor as slippery." Id. at 538. Because the plaintiff failed to present any evidence of some positive negligent acts by defendant in the way it maintained its floors or of the presence of a foreign substance, there was no negligence by the defendant. Id.

Likewise, in Erkol, the only evidence the plaintiff presented was her own testimony that the floor appeared "overly waxed" and the statement of her daughter, who worked at the store, that she also thought the floor to be slippery. Erkol, 1989 WL 18248, at *1. In Magallon, the plaintiff characterized the floor on which she slipped as "highly waxed" and "shiny." Magallon, 1988 WL 92695, *1. The Erkol and Magallon courts granted summary judgment in favor of the defendants because other than subjective characterizations about the appearance of the floors, the plaintiffs failed to produce any specific evidence that the floors were negligently treated or maintained. Erkol, 1989 WL 18248, at *2; Magallon, 1988 WL 92695, *3. The Magallon court noted that the plaintiff had not "presented any evidence to show that the defendant either applied the wrong type of wax, misapplied the wax, or took, or failed to take, any other actions that resulted in a dangerous condition on the floor." Magallon, 1988 WL 92695, *3.

Here, other than her current subjective characterization of the floor as slippery, the only evidence to support Fultz's theory of an unreasonably slippery floor is her deposition testimony that a Target cashier told her that Target had previously received multiple complaints of slippery floors

after the floors had been buffed. Assuming this fact to be true, it is not enough to avoid summary judgment on the issue of Target's alleged responsibility for a dangerous condition on the floor. Fultz has provided no evidence that the particular area of the floor on which she fell had been buffed or treated shortly before she fell. Moreover, as the plaintiffs in Lucker, Erkol, and Magallon, Fultz additionally presented no evidence that Target negligently buffed or treated the floor.[5]

**B.      Target's Actual or Constructive Knowledge of the Alleged Slippery Condition**

Although there is no evidence that Target negligently created the allegedly slippery condition of the floor, Target may still be liable if its employees knew of a dangerous condition or if Target's employees should have discovered a dangerous condition in the exercise of reasonable care but did not. Carlson v. Wal-Mart Stores, Inc., 2007 WL 4569867, at *5 (N.D. Ill. Dec. 21, 2007). Fultz argues that she has presented sufficient evidence from which a trier of fact could determine that Target knew or should have known that the floor on which she slipped and fell was unreasonably slippery.

Fultz has presented no evidence that Target employees knew that the particular area where Fultz fell was slippery prior to her fall or that Target should have known that the precise area where Fultz fell was slippery. Target employee Geneva Martin performed a walk-through of the particular area where Fultz would fall prior to the store's opening and found that the aisle where Fultz would later fall had no obstructions, liquid, or slippery substances on the floor. Fultz, herself, admitted that she does not know what caused her to slip and fall and did not see or feel any liquid, solid material,

---

[5] Fultz attempts to distinguish Redenbaugh and Magallon on the ground that here she is relying on a store employee's testimony that there were multiple complaints of the floor being slippery, not solely her own subjective characterization of the floor as slippery. This distinction is inconsequential because Lucker and Erkol found store employee testimony that the floor was slippery in addition to the plaintiff's similar characterization insufficient evidence to create a genuine issue of material fact as to the presence of a foreign substance or as to whether the floor was negligently treated or maintained. See also Carlson v. Wal-Mart Stores, Inc., 2007 WL 4569867, *4 (N.D. Ill. Dec. 21 2007) (holding that testimony by plaintiff, her husband, and three store employees that the floor was "slippery" was insufficient as a matter of law to support a finding of negligence).

debris, or anything else on the floor that could have caused her to fall. Fultz also signed a Guest Incident Report the day she fell acknowledging that the floor was clean and dry at the time of her fall, that her clothes were not wet or damaged, and that no object was involved in the fall. Finally, a review of the store surveillance video indicates that the particular area where Fultz fell was not slippery. The video shows over twenty people walking through the area of Fultz's fall in the minutes before and after the fall without slipping and without any apparent difficulty. Faced with this evidence, a reasonable trier of fact could not conclude that Target knew or should have known of the alleged slippery floor.

Once again, the only evidence Fultz cites in support of her position that Target knew or should have known that the floor was slippery comes from a Target cashier who Fultz says told her that the store "had multiple complaints that the floors were slippery" after it buffed the floors. Doc. 65 at 21, ¶ 2. As noted above, Fultz presents no evidence that the precise area of the floor where she fell had been waxed, polished, buffed or had undergone any other type of treatment close to the time of her fall. Fultz provides no evidence that there was a prior complaint of slipperiness in the particular area of the floor where she slipped or that anyone had slipped in that area before. As Target notes, there is also no evidence indicating that the cashier who told Fultz there had been complaints of slipperiness after buffing had any idea what area of the store Fultz fell or that the cashier was even referring to the area where Fultz fell as opposed to a completely different area of the store.

In Carlson v. Wal-Mart Stores, Inc., 2007 WL 4569867 (N.D. Ill. Dec. 21, 2007), the plaintiff slipped and fell while shopping in the automotive aisle of a retail store. The plaintiff admitted that the area of the floor on which she fell was dry but claimed it was slippery. Id. at *1. Three employees testified that the area of the floor on which the plaintiff had fallen was "slippery." Id. at *3. One employee suggested that the slippery condition was caused by the floor being buffed or

waxed by the overnight cleaning crew. Id. at *1. The plaintiff and the employees testified consistently that there was no substance on the floor that they could see or feel. Id. at *3. The only way to detect that the floor was slippery was by physically sliding a hand or foot across it. Id. at *5. Even though it was undisputed that the particular area of the floor on which the plaintiff had fallen in Calson was slippery, the court held that slipperiness alone cannot support a finding of negligence. Id. at *4. The court noted that "[s]ubjective verbal characterizations that a floor is slippery, without more, continue to remain insufficient proof that a floor was negligently maintained.' This is because '[s]uch statements are 'hopelessly lacking in precision of meaning' and do not provide a basis for balancing the owner or occupier's conduct against the applicable standard of care.'" Id. at *4. Because there was no evidence that there was any substance on the floor, that the floor was waxed negligently, or that it was waxed or buffed at all, the Carlson court found that the plaintiff's and employees' testimony that the floor was "slippery" was insufficient to support a verdict for the plaintiff on the negligence issue.

The facts in this case are even stronger than Carlson in showing no actual or constructive notice of a slippery floor. Unlike the three employees in Carlson who testified that the floor was slippery, here no Target employee testified that the particular area where Fultz fell was slippery. Notwithstanding the undisputed slipperiness of the precise area of the floor in Carlson, the court granted the defendant's summary judgment motion. In Carlson, "there [was] no competent evidence that the floor was improperly waxed or buffed, or that it was waxed or buffed at all." Id. at *6. There was also no evidence that Wal-Mart knew or should have known that the area where the plaintiff slipped was slippery prior to her fall. Id.

Similarly, there is no evidence here that the particular area of the floor on which Fultz slipped and fell had been negligently buffed or buffed at all. There is no evidence that Target knew or should have known that the particular area where Fultz fell was slippery before she fell. Fultz's

attempt to distinguish Carlson on the ground that Target's employees knew about the slippery condition of the floor because one cashier told Fultz that there were "multiple complaints that the floors were slippery" after buffing is unpersuasive. Absent some indication that the particular floor area at issue had, in fact, been buffed or treated shortly before Fultz's accident and that the buffing was done negligently, no reasonable trier of fact could conclude that Target knew or should have known that the particular area of the floor on which she slipped and fell was slippery. Again, the cashier's alleged statement does not indicate that the cashier had any idea what area of the store Fultz fell or that the cashier was referring to the area where Fultz fell.

In the end, Fultz's theory of a slippery floor due to buffing is nothing more than a guess. Fultz concedes that "it is true that one can only guess whether the Defendant is at fault." Doc. 65 at 5. Nevertheless, Fultz opposes summary judgment because "it is possible that the floor was unreasonably slippery." Id. at 5. In Fultz's view, "something must have caused [her] to slip on the floor." Id. at 12. As long as she identifies a possible theory of what caused her to slip and fall, Fultz believes that "this guess . . . is one for the jury to make." Id. at 5. That is, however, not the law. Rather, Fultz must provide specific evidence beyond mere speculation to survive summary judgment. Good v. University of Chicago Medical Center, 673 F.3d 670, 675 (7th Cir. 2012) (stating "guesswork and speculation are not enough to avoid summary judgment."); Bell v. Duperrault, 367 F.3d 703, 707 (7th Cir. 2004) (noting that "[i]nferences that are supported only by conjecture or speculation will not defeat a summary judgment motion"). To defeat summary judgment, Fultz must present some evidence from which a reasonable jury could conclude that Target caused a foreign substance to be on the floor, knew of its presence there and did nothing about it or in the exercise of ordinary care should have discovered it, or improperly maintained, cleaned, or treated the floor, causing her to slip and fall. Harris N.A. v. Hershey, 711 F.3d 794, 798 (7th Cir. 2012) (explaining that non-movant must produce more than "a mere scintilla of evidence" and come forward with

"specific facts showing that there is a genuine issue for trial" to defeat summary judgment.). No such evidence exists in the record here. Because the evidence viewed in the light most favorable to Fultz demonstrates that there is no genuine issue of material fact as to Target's negligence, Target is entitled to summary judgment.

## **CONCLUSION**

For these reasons, Target's motion for summary judgment is granted. Pursuant to Federal Rule of Civil Procedure 54(b), the Court finds that there is no just reason to delay the entry of final judgment as to Fultz's negligence claim asserted against Target. The Clerk is directed to enter judgment in favor of Defendant Target Corporation and against Plaintiff Monique Fultz. Target's claim against Prestige remains pending. A status hearing is set for March 10, 2016 at 9:30 a.m.

**E N T E R:**

*[signature: Daniel G. Martin]*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: 2/1/2016**